IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **TIMOTHY R. MCGREAL,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 11 C 5603 |
| **FREDERICK B. SEMKE, PATRICIA A.** | ) |
| **SEMKE, SEMKE CONSULTING, INC. d/b/a** | ) |
| **Semke Forensic,** | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Timothy McGreal filed a lawsuit against defendants Frederick Semke, Patricia Semke, and Semke Consulting, Inc. ("Semke Forensic") alleging violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.*, tortious interference with a contract, and breach of contract. Before me is defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), and (6).[1] For the reasons discussed below, the motion is granted in part and denied in part.

I.

McGreal began working for Semke Forensic in early December 2009. At the time, McGreal worked as a Mechanical and Fire

---

[1] Defendants frame their 12(b)(3) motion as a motion based on the first-to-file doctrine, and I therefore treat it as such.

Protection Engineer and District Manager in Semke Forensic's Chicago office. In November 2009, McGreal and Semke Forensic entered into an Employment Contract which was drafted, negotiated and signed by Frederick Semke, who is the President and Principal Engineer of Semke Forensic. The contract covered compensation and benefits, including vacation and the payment obligations of Semke Forensic upon termination of McGreal's employment. The contract also stipulated that McGreal was an at-will employee.

On July 8, 2011, Frederick Semke terminated McGreal's employment with Semke Forensic. Afterward, McGreal approached Frederick Semke stating that he was owed vacation and a revenue sharing payment. On July 12, 2011, unbeknownst to McGreal, Semke Forensic filed a petition for declaratory judgment in the Circuit Court of St. Charles County, Missouri. McGreal continued to call Frederick Semke about what he was owed under the contract, but did not hear back from Frederick Semke. McGreal's lawyer contacted Frederick Semke in early August 2011, demanding payment to his client. At that time, McGreal learned about the Missouri lawsuit. On August 18, 2011, McGreal filed his coercive lawsuit in this court.

Defendants now move to dismiss McGreal's claims, arguing that the Missouri action should have priority over this action under the first-to-file doctrine, that the fiduciary shield doctrine protects Frederick and Patricia Semke from personal

2

jurisdiction, and that McGreal has failed to state a claim under the IWPCA or for tortious interference with contract.

## II.

Because this is a motion to dismiss, I assume to be true all well-pleaded allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of its claims or to determine a plaintiff's ability to succeed on his claims. *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996). A complaint must do more than recite the elements of a cause of action, and a court need not accept mere labels and legal conclusions as factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Nor will a court presume facts not alleged. *Id.*

### A. First-to-file rule

The Seventh Circuit has "repeatedly taught that this circuit does not rigidly adhere to a first-to-file rule," particularly where parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d

973, 980 (7th Cir. 2010). In such cases, "we ordinarily give priority to the coercive action, regardless of which case was filed first." *Id.* In this case, Semke Forensic filed a declaratory judgment action on July 12, 2011 in the Circuit Court of St. Charles County, Missouri. Just over one month later, on August 18, 2011, McGreal filed his coercive action in this court. Therefore, barring other factors favoring transfer, the first-to-file doctrine is not a bar to McGreal's coercive lawsuit.[2]

Further, Semke Forensic filed its declaratory judgment action only two days after McGreal's employment was terminated and while McGreal was actively seeking to resolve the matter with Frederick Semke directly. McGreal has alleged, and stated in a sworn affidavit, that he attempted to settle his claim repeatedly through July 20, 2011, and that Frederick Semke indicated during that time that he would be in touch with McGreal about what, if anything, was owed to the former employee. Meanwhile, Semke Forensic had already filed its declaratory judgment action. McGreal alleges he did not learn about the lawsuit until after his attorney sent a demand for payment on August 1, 2011. Such

---

[2] No factors favoring transfer are present here. Defendants have not alleged facts to suggest that litigating in Illinois would be any more inconvenient than it would be for plaintiff to litigate in Missouri, and there are questions of Illinois and Missouri law at issue such that the interests of justice do not favor one forum over the other.

anticipatory filing counsels against giving priority to Semke Forensic's declaratory judgment action.

B. Personal jurisdiction over Frederick and Patricia Semke

Where jurisdiction is contested in a motion to dismiss, a plaintiff need only make a *prima facie* showing of jurisdictional facts. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Accepting as true all well-pleaded facts, I conclude that McGreal has made a *prima facie* showing of personal jurisdiction with regard to Frederick Semke but not Patricia Semke.

A federal court exercising diversity jurisdiction has personal jurisdiction over a defendant if the state in which it sits would have such jurisdiction. *See, e.g., RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). The reach of Illinois' long-arm statute is coterminous with that of the due process clauses of the Illinois and U.S. Constitutions. 735 ILCS 5/2-209(c). "In almost all cases, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns regarding personal jurisdiction." *Keller v. Henderson*, 834 N.E.2d 930, 941 (Ill. App. Ct. 2005).

The exercise of personal jurisdiction satisfies the requirements of federal due process when the defendant has "certain minimum contacts with [the forum state] such that the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

The scope of personal jurisdiction is determined by the relationship between the cause of action and the defendant's contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A defendant with "continuous and systematic" contacts with a particular forum is subject to general jurisdiction there, which means that any action may be brought against the defendant, regardless of whether the action is related to the defendant's contacts with the state. *Tamburo*, 601 F.3d at 701 (citing *Helicopteros Nacionales*, 466 U.S. at 416). A defendant whose activities are not so extensive as to warrant an exercise of general jurisdiction may nonetheless be subject to specific jurisdiction. A forum state may assert specific jurisdiction over a defendant where: "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at

6

702 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

Under the Due Process Clause of the Illinois Constitution, a court may exercise jurisdiction "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002). One situation in which the Illinois Supreme Court has found "it is unfair and unreasonable" to assert personal jurisdiction is where "an individual ... seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal." *Rollins v. Ellwood*, 565 N.E.2d 1302, 1318 (Ill. 1990). As such, the "fiduciary shield" doctrine "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994). The "fiduciary shield" doctrine will protect a non-resident whose contact with Illinois is "by virtue of his acts as a fiduciary of a corporation." *Plastic Film Corp. of America, Inc. v. Unipac, Inc.*, 128 F.Supp.2d 1143, 1146 (N.D.Ill. 2001) (quoting *Alpert v. Bertsch*, 601 N.E.2d 1031, 1037 (Ill. App. Ct. 1992)). However, "the

shield is withdrawn if the agent was acting also or instead on his own behalf—to 'serve his personal interest.'" *Rice*, 38 F.3d at 912 (quoting *Rollins*, 565 N.E.2d at 1318).

Turning first to Patricia Semke, McGreal has not alleged that Patricia Semke had any contacts at all with Illinois. As for Frederick Semke, McGreal has alleged a number of jurisdictional facts, including that Frederick Semke: was in the Chicago office when he fired McGreal, made significant decisions regarding the Chicago office, signed a lease for the Chicago office, and has maintained an Illinois professional engineering license. These facts are sufficient to support an exercise of personal jurisdiction over Frederick Semke.

Frederick Semke argues, though, that he is protected from an exercise of personal jurisdiction because of the fiduciary shield doctrine. Several courts in this district have concluded that the fiduciary shield doctrine does not apply to high-ranking corporate officers who are also shareholders of the corporation, finding that such defendants had personal interests that would render the fiduciary shield doctrine inapplicable. *See Consumer Benefit Services, Inc. v. Encore Marketing Int'l, Inc.*, 2002 WL 31427021, at *3-4 (N.D.Ill. 2002) (refusing to apply the fiduciary shield doctrine where defendant was the chief operating officer and a shareholder); *Plastic Film Corp.*, 128 F.Supp.2d at 1147 ("[t]he determinative factor is the individual's status as a

8

shareholder, not merely as an officer or director"); *R-Five, Inc. v. Sun Tui, Ltd.*, 1995 WL 548633, at *5 (N.D.Ill. 1995) ("[a]s president, board member, and (most importantly) shareholder ... [defendant] has a particularly personal interest in the continuing future of [the corporation]"). McGreal has alleged that Frederick Semke is the President and Principal Engineer of Semke Forensic as well as a shareholder of the corporation. As president and shareholder, Frederick Semke has a direct and personal interest in Semke Forensic's financial expenditures and well-being. I find that the fiduciary shield doctrine does not protect Frederick Semke from being subject to personal jurisdiction in Illinois. Therefore, I find that I can assert personal jurisdiction over Frederick Semke, but not over Patricia Semke.[3]

C. Claim under the Illinois Wage Payment and Collection Act

The IWPCA "applies to all employers and employees in this State." 820 ILCS 115/1. The Illinois legislature has not defined "employer ... in this State" and the Illinois courts have not provided a definitive interpretation of this term either. The leading case law has stated that the IWPCA only applies to "Illinois employees and Illinois employers." *Khan v. Van Remmen,*

---

[3] The issue of whether Frederick Semke was properly served with process has been resolved by the waiver of service filed on his behalf on November 3, 2011.

9

*Inc.*, 756 N.E.2d 902, 913, 325 Ill.App.3d 49 (Ill. App. Ct. 2001); *see also Glass v. Kemper Corp.*, 920 F.Supp. 928, 931 (N.D.Ill. 1996) ("the Wage Act applies to a group consisting of employers and employees, all of whom are in Illinois"). However, the Illinois courts have yet to resolve whether a corporation that is a citizen of another state yet conducts substantial business in Illinois and also maintains offices within the state is an "Illinois employer" for purposes of the statute.

Indeed, in *Khan*, the Illinois Appellate Court explicitly limited its holding to the facts of that case, stating "we do not purport to create an all-encompassing definition of 'employers in this State' for purposes of the Wage Act. Rather, we determine only that under the circumstances of this case plaintiff has not pleaded any facts from which we could conclude that [defendant] was an employer in this state." 756 N.E.2d at 913. *Khan* is easily distinguishable from this case. In that case, defendant was a labor placement agency that had its principal place of business in another state, had no physical presence in Illinois, and had placed only four individuals with Illinois companies. *Id.* at 912-13. These facts led the court to find that the IWPCA did not cover the defendant. *Id.* at 913.

Defendants argue that Semke Forensic does not fall under the purview of the IWPCA because it is a Missouri corporation with its principal place of business in Missouri. However, McGreal

has alleged that Semke Forensic is an Illinois employer and at a minimum maintains an office in Illinois, markets its services in Illinois, and conducts substantial business in the state. That is a sufficient basis to withstand a motion to dismiss. *See Musso v. Excellence in Motivation, Inc.*, 2010 WL 3385452 (N.D.Ill. 2010).

Additionally, Section 13 of the IWPCA states that "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13. Therefore, "[l]iability under the Wage Act can be imposed upon ... any officers of a corporation or agents of an employer who knowingly permitted the Wage Act violation." *Andrews v. Kowa Printing Corp.*, 838 N.E.2d 894, 901 (Ill. 2005). In his complaint, McGreal alleged that Frederick Semke purposefully and knowingly refused to pay McGreal wages due to him. Frederick Semke also is also alleged to have continually put off McGreal and avoided any discussion of what, if anything, McGreal was owed under the terms of the contract. I find that McGreal has alleged sufficient facts to state a claim for relief against Frederick Semke, individually, under the IWPCA.

In sum, McGreal has alleged facts that, if proved, would qualify Semke Forensic and Frederick Semke as Illinois employers and create liability under the IWPCA.

D.  Claim for tortious interference with contract

In a case that bears a striking resemblance to the one in front of me, the Seventh Circuit has found that corporate officers could be liable for tortious interference with contract. *Stafford v. Puro*, 63 F.3d 1436 (7th Cir. 1995). In *Stafford*, a former employee sued his former employer, a corporation, along with two of the corporation's owners and officers. The corporation at issue in *Stafford* was closely-held and its shareholders were all family members. Given these facts, the Seventh Circuit rejected the very argument defendants rely on here and found that shareholders and officers of a closely-held corporation can tortiously interfere with a contract between the corporation and an employee. *Id.* at 1441-42.[4]

---

[4] Drawing all inferences in favor of McGreal, I find that for the purposes of this motion to dismiss, defendants have not shown that there is no set of facts under which McGreal could succeed in showing that Frederick Semke tortiously interfered with the contract between McGreal and Semke Forensic. It does not appear from the limited record at this point that Frederick Semke is the sole shareholder and officer of Semke Forensic, which would distinguish *Stafford*. *See, e.g., Rao v. Rao*, 718 F.2d 219, 225 (7th Cir. 1983) (emphasizing that a sole shareholder, officer, and director could not be considered to be an entity separate from the corporation).

The *Stafford* court also noted that because a corporation can only act through its officers and directors, such individuals must be able to act on behalf of the corporation without fear of personal liability. 63 F.3d at 1442. Therefore, in Illinois the decisions of corporate officers and directors are conditionally privileged, and a plaintiff must prove actual malice to prevail on a tortious interference claim. *Id.* Malice is defined as "intentional and unjustified" interference with contract. *Id.* (quoting *HPI Health Care Services, Inc. v. Mt. Vernon Hosp.*, 545 N.E.2d 672, 677 (Ill. 1989)). McGreal has made ample factual allegations to support his claim of malicious tortious interference by Frederick Semke. At the very least, McGreal has alleged that Frederick Semke was unjustified in refusing to pay McGreal according to the terms of the contract upon termination of his employment. The Seventh Circuit has found that a violation of the IWPCA constituted illegal and unjustified conduct. *Id.; see also HPI Health Care*, 545 N.E.2d at 678 ("A defendant who is protected by a privilege is also unjustified in using illegal means to induce a breach of contract"). Further, McGreal has alleged that he notified Semke Forensic and Frederick Semke of the corporation's obligations under the contract and that defendants were aware of Semke Forensic's debt to McGreal, thus rendering Frederick Semke's refusal to pay intentional and

13

unjustified. Therefore, I find that McGreal has stated a claim against Frederick Semke for tortious interference with contract.

III.

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. As a result, Plaintiff may pursue his breach of contract claim against Semke Forensic, his claim under the IWPCA against Semke Forensic and Frederick Semke, and his claim for tortious interference with contract against Frederick Semke. Claims against Patricia Semke are dismissed.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: November 22, 2011

14